Application of STATE BOARD OF MEDICAL EXAMINERS. In re NATHAN.

No. 34037. May 10, 1949.

*206 P. 2d 211.*

Rosenstein, Fist & Shidler, of Tulsa, and W. R. Wallace, Jr., of Oklahoma City, for applicant, Robert E. Nathan.

B. E. Harkey, of Oklahoma City, and Fred J. Hansen, Asst. Atty. Gen., for State Board of Medical Examiners.

GIBSON, J. Robert E. Nathan made application in 1947 to the State Board of Medical Examiners, hereinafter referred to as Medical Board, for permission to take the regular examination prescribed by law for license to practice medicine and surgery. Upon being denied, he appealed to the Statutory Appeal Board (59 O. S. 1941 §499), where, upon review, it was held that the applicant was entitled to take such examination. To review the action of the Appeal Board the writ of certiorari was granted on application of said Medical Board.

Tit. 59 O. S. 1941 §§489, 493 and 499, are as follows:

"Sec. 489. The Board of Medical Examiners shall from time to time adopt such rules and regulations as may be necessary to carry into effect the provisions of this Act," . . .

"Sec. 493. The State Board of Medical Examiners shall admit any applicant to the regular examination for license to practice medicine and surgery within the meaning of this Act, who makes application therefor verified by oath upon forms provided by the said board and who shall accompany the application with the fee of Twenty-five ($25.00) Dollars; provided, that an applicant, to be eligible for examination, must present satisfactory evidence of identification; that he is of good moral character and is not addicted to habitual intemperance or the habitual use of habit-forming drugs; that he has not been convicted of a felony or any crime involving moral turpitude; that he has never been guilty of unprofessional conduct as hereinafter defined; that his medical license has never been revoked within any other State for cause; and that he is not suffering with active tuberculosis or venereal disease.

"It is further provided that the applicant must submit satisfactory evidence that he is a graduate of a legally chartered medical college or university, the requirements of which for graduation shall have been, at the time of such graduation, in no particular less than those prescribed by the Association of American Medical Colleges for that particular year.

"It is further provided that the Board of Medical Examiners may, at such time as it deems expedient, require of all applicants for the examination of a properly certified certificate that they have served a one year's internship in a general hospital which is approved and recognized by the said board."

"Sec. 499. In case any applicant for license or certificate under any form herein provided for, shall feel aggrieved or dissatisfied with the official action of the board thereon, he shall have the right to have all his records reviewed by an appeal board, consisting of the Superintendent of Public Instruction of the State, the Attorney General and the Dean of the Medical Department of the State University, and their findings shall be final. The said Superintendent of Public Instruction, the Attorney General, and the Dean of the Medical Department of the State University are hereby designated an Appeal Board for the purposes herein provided, and shall, upon written request of the applicant and the Secretary of the Board of Medical Examiners, review all the records of the case and shall make their findings in writing to the Secretary of this board and a copy thereof to the applicant, and the verdict rendered therein shall be a final disposition of the question involved."

In pursuance of the statutory grant of power, the Medical Board, in 1923, adopted a rule, designated as rule No. 1, which is as follows:

"(1) All applicants for licensure to practice medicine and surgery in the State of Oklahoma, graduating since

1917, must have graduated from a Class 'A' school, as classified by the Association of American Medical Colleges for that particular year."

And in 1937 there was adopted rule 7, which is as follows:

"(7) Due to the inability to obtain proper information as to the standing of medical schools in foreign countries, graduates of foreign schools, with the exception of approved schools of Canada, shall not be eligible for licensure in the State of Oklahoma, until further ruling of this Board."

The grading required in rule 1 was done by the branch of the American Medical Association known as Council on Medical Education and Hospitals. As reflecting the basis for rule 7 and the attitude of the Council with reference to foreign medical institutions, the following letters written by the Secretary of the Council to the Secretary of the Medical Board were introduced in evidence:

"July 25, 1935
"In reply to your request of July 23, I beg to advise you that this Council does not grade or classify medical schools outside of the United States and Canada. We have, therefore, no rating for the University of Breslau or the University of Hamburg."

"April 21, 1937
"In reply to your inquiry of April 17, I beg to advise you that this Council does not grade or classify schools outside of the United States or Canada. We have no means of securing official reports from foreign institutions or any opportunity to make personal inspections. It is obvious, therefore, that the Council cannot vouch for the standing of European medical schools."

"November 7, 1945
"It has always been the policy of the Council on Medical Education and Hospitals of the American Medical Association to limit the schools which it considers for inclusion on its approved list to institutions which it can visit and inspect. Even before the war it was not possible to carry out inspections in medical schools outside the United States and Canada. Consequently, the Council maintains no list of approved schools in foreign countries. It neither approved nor disapproves such institutions.

"It is incumbent upon medical schools in this country, licensing boards, or other agencies, to make their own evaluation of the credentials submitted from a medical school of a foreign country. This Council has no objection to the acceptance of credentials from such foreign institutions."

It appears that the applicant graduated from the Royal University of Florence, Italy, Faculty of Medicine, in October 1936. He immigrated to the United States, arriving May 7, 1937. On May 15th, following, he made application for citizenship, which was granted in due course of time. During the same year, after an examination by the Board of Medical Examiners of the State of New York, he was admitted to practice medicine and surgery in that state. He served one year (July 1, 1940, to July 1, 1941) as interne in St. John's Hospital in Tulsa, Okla. Thereafter he volunteered his services to the U. S. Government in World War II. He was commissioned an officer in the medical corps of the U. S. Army in 1943, serving three years therein, a part of which time was spent overseas, and was discharged with rank of Major. Thereafter he was employed by the Veterans Administration for approximately one year in its hospital at Muskogee, Okla. While so engaged he made said application to the Medical Board. Action on the application having been delayed, he applied to the State Board of Medical Examiners of Texas for permission to take the examination in that state, and upon same being granted he took the examination and was licensed to practice in that state. Accompanying the Oklahoma application and in evidence before the Appeal Board is an affidavit of the applicant wherein affiant sets forth in detail what is averred to be the subjects required by the Association of American Colleges during 1936 to be taught in a curriculum ex-

tending for a period of four years and it is therein declared that the requirements for graduation of said Royal University of Florence, Faculty of Medicine, included all of said subjects and that, before graduation, he attended said University for a period of at least four years, actually received instruction in each and all of said subjects, and that he completed the courses of instruction thereon. And it is therein declared that the requirements for his graduation were in no particular less than those prescribed by the Association of Medical Colleges for that particular year.

It is admitted by the Medical Board that the applicant possesses the qualifications required by the first and third paragraphs of section 493, supra, and the question here involves the Appeal Board's holding that applicant furnished the evidence required by the second paragraph, which reads:

"It is further provided that the applicant must submit satisfactory evidence that he is a graduate of a legally chartered medical college or university, the requirements of which for graduation shall have been, at the time of such graduation, in no particular less than those prescribed by the Association of American Medical Colleges for that particular year."

The position of the Medical Board thereon is reflected by the following excerpt from the testimony of Dr. Weber, a member, who testified on its behalf:

" . . . in talking over Dr. Nathan's case at the meetings of the Board I have attended there was no one who felt it was a reflection on Dr. Nathan's ability or his integrity but that we had a rule here we have been maintaining for a number of years. We think it is a good rule that we will not accept those who are not graduates of Class 'A' schools. . . . I think the rule is safe— that we will not accept any foreign schools unless it has been certified by the Association of American Medical Colleges."

It is contended here on behalf of the Medical Board that unless its action in refusing applicants for examination was arbitrary and capricious, the Appeal Board exceeded its jurisdiction; that the Appeal Board considered evidence in addition to that certified; and that the unsupported affidavit of applicant was not sufficient to satisfy the requirements of said second paragraph.

The matters presented extend beyond the proper scope of this court's review. In McCoy et al. v. Hall, District Judge, et al., 191 Okla. 311, 131 P. 2d 60, we said:

"A writ of certiorari brings up for review the sole question of whether the inferior tribunal kept within or exceeded the jurisdiction conferred upon it by law. The writ cannot be used to correct errors of law or fact committed by an inferior tribunal within the limits of its jurisdiction."

The only question of jurisdiction that can obtain is whether the Appeal Board exceeded its jurisdiction in holding applicant entitled to take the examination in view of the facts (1) he did not possess a diploma from a Grade A school as required by said rule 1, and (2) was declared ineligible for license by said rule 7. The absence of jurisdiction to so hold being predicated on such rules having the force of law (21 C. J. S., p. 37, §25).

In support of the contention that it was incumbent upon the Appeal Board to find that the act of the Medical Board in refusing to permit the examination was arbitrary and capricious before it could hold applicant entitled to take the examination, there is cited Otto Marburg v. Ernest E. Cole et al., 286 N. Y. 202, 36 N. E. 2d 113, where the granting of the license was discretionary with the Commissioner of Education after the applicant had met the statutory requirements. That the rule so announced can have no application in the instant case where the granting of the license is made mandatory when

the requirements of the statute are met, is too manifest for question. In Robert E. Posey et al. v. Board of Education, etc., 199 N. C. 306, 154 S. E. 393, 70 A. L. R. 1306, it was held:

"Where power is conferred by statute upon an administrative board with respect to matters committed to such board, and the exercise of such power is made mandatory, such board, although it may have discretion as to the manner in which the power shall be exercised, has no discretion as to whether it shall, in good faith and in accordance with legislative will, exercise the power."

See, also, 42 Am. Jur. 380, §69.

The only question of discretion on the part of the Medical Board appertains to that with which it is endowed in promulgating its rules, the effect of which as law must rest upon the fact that they are in aid of and not in derogation of the legislative purpose (42 Am. Jur. 380, §69, and p. 353, §49; Thomas Layman v. State Unemployment Comm., etc., 167 Ore. 379, 117 P. 2d 974, 136 A. L. R. 1468). The reason therefor is thus declared in 42 Am. Jur. 342, §45:

"It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience, or in effect nullified for the same expediency."

In St. Louis Independent Packing Co. v. Houston, Secretary of Agriculture, et al., 215 Fed. 553, 559, it is said:

"It is within the power of Congress to vest in executive officers the power to promulgate administrative rules, but this never is deemed to extend to the making of rules to subvert the statute."

Under the statutes the possession of a diploma from a Grade A school is not made a condition precedent to being permitted to take the examination, but under the rule it is. If the rule has the force of law and is applicable in the instant case, the applicant, not possessing such a diploma, is ineligible to apply and for that reason the Appeal Board could not lawfully sustain the application. Hence, the question is whether the rule has the force of law in the instant case.

In support of the rule Charles H. Graves v. State of Minnesota, 272 U. S. 425, 47 S. Ct. 122, 71 L. Ed 331, is cited. The question there was the constitutionality of a statute which prescribed the possession of a diploma from a dental college in good standing as a prerequisite to examination for license to practice dentistry. The court held that it was "not so arbitrary and unreasonable as to exceed the police power of the State."

This holding deals with the extent of the police power of the state in such matters and affords no criterion of the power of the Medical Board which is subordinate to the legislative will as provided in the statute.

There is cited, and relied on as affording a parallel situation, Jones v. Kansas State Board of Medical Registration and Examination, 111 Kan. 813, 208 P. 639. There the rule of the Board required of applicants for examination a diploma from a Grade A school. The applicant had only a diploma from a Grade C school. He was denied permission to take the examination and the court action followed. The question there was the integrity of the rule in a situation where necessarily applicable, and it was upheld by a divided court. The holding there could be persuasive as authority in this case only if the question of the validity of said rule 1 as a whole was involved.

The only authorized basis for any rule is that it is a means to the accomplishment of the legislative purpose expressed in the statute and its quality is to be judged by the effect thereof when used. If conducive to such purpose it is authorized by the statute. If not so conducive it -is not authorized

by the statute and therefore without the force of law (Georgia Railroad & Banking Co. v. Smith, 70 Ga. 694; Id., 71 Ga. 863, affirmed in 128 U. S. 174, 9 S. Ct. 47, 32 L. Ed 377). The doctrine is clearly stated in State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N.S.) 639, as follows:

"The authority to make rules and regulations is given, but no power is conferred or attempted to be conferred upon the commission to give the rules and regulations the force and effect of a law. Whatever force and effect the rule has is derived entirely from the statute. No authority is given to change the law in any way. Authority to make rules for the complete lawful operation of the statute is all that is given."

Assuming, but not deciding, that rule 1 is valid as fixing a standard to be applied to applicants graduating from schools within the area where the system of the grading is applied, it does not follow that it should apply to applicants holding diplomas from schools without such area and to which the prescribed grading can have no pertinent bearing.

Under the statute Nathan was entitled to apply for the examination. As a condition to the exercise of the statutory privilege it was incumbent upon him to furnish satisfactory evidence that the school from which he graduated measured up to the statutory requirements. And there devolved upon the Medical Board the duty to weigh such evidence and determine whether same was sufficient. Since his graduating school was not within the area where the grading system obtained, the only intelligent method of determining the quality of the graduating school was that prescribed by statute which is to weigh the evidence submitted.

Such conclusion as to the duty of the Medical Board in the situation is expressly recognized in the letter of Council on Medical Education and Hospitals under date of November 7, 1945, supra, which letter, according to statement in its brief, the Medical Board had before it when passing upon Nathan's application. If, upon weighing the evidence submitted, the Medical Board found same insufficient the application would be properly denied, in which case the terms of the statute would be recognized as operative and the applicant, having been accorded his full right, would have no cause for complaint. But to hold that the applicant in this case is to be debarred from applying because he does not have a diploma from a Grade A school is not only not conducive to accomplishing the purpose of the statute but is subversive thereof by withholding from the applicant a right afforded by the statute and excusing the Board from the performance of a duty enjoined thereby. We hold that rule 7, relied on by the Medical Board as authority for its action, is inoperative because unauthorized; that the applicant was entitled to make application for the examination; and that the Appeal Board did no exceed its jurisdiction in the premises.

The decision of the Appeal Board is affirmed.

DAVISON, C.J., ARNOLD, V.C.J., and CORN, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur.