Leo **WINTERS**, State Treasurer, Plaintiff,

v.

**STATE DEPOSITORY BOARD**, Defendant.

No. 43700.

Supreme Court of Oklahoma.

Nov. 4, 1969.

Robert G. Grove, Oklahoma City, for plaintiff.

G. T. Blankenship, Atty. Gen., Dell Gordon, Asst. Atty. Gen., Tim Leonard, Asst. Atty. Gen., Oklahoma City, for defendant.

IRWIN, Chief Justice.

On July 24, 1969, the State Depository Board adopted an order effective September 1, 1969, relating to the deposit of State monies and funds coming into the hands of the State Treasurer as the official depository.

In this proceeding the State Treasurer has requested this Court to assume original jurisdiction and issue a writ prohibiting the State Depository Board from exercising its authority concerning matters contained in the order of July 24, 1969, which the State Treasurer contends are the constitutional and statutory prerogatives of his office.

On August 5, 1969, this Court, acting under the authority of Article 7, Sec. 4, Oklahoma Constitution, assumed jurisdiction and stayed the order of the State Depository Board until further order of this Court. The matter now stands submitted for adjudication.

The issues presented have been fully briefed by the State Depository Board, herein referred to as Board, and the State Treasurer. However, both parties in their attempt to fully advise this Court have discussed certain collateral matters which are not germane to the fundamental issues presented. These issues can be determined and resolved by examining Board's order and considering the import of such order in connection with the statutory authority of Board and the State Treasurer.

We will first consider the statutory authority of Board and the State Treasurer. In Winters v. Governor's Special Committee, Okl., 441 P.2d 370, we said:

"The treasurer is given custody of the public fund by virtue of 74 O.S.1961, § 362 and the authority to deposit this fund for safekeeping in an approved bank under such terms and conditions as he shall impose, subject to the limitations contained in 62 O.S.1961, § 71 et seq., creating the State Depository Board. His duty to account is provided for in 74 O.S.1961, §§ 368 and 369."

The only limitations of the State Treasurer's authority placed in issue in this proceeding involve the statutory authority of Board. The last legislative enactment affecting Board's authority involved in this proceeding was in 1937 (see 1937 S.L., Ch. 27, p. 120) which is now codified as Title 62 O.S.1961, Secs. 71, 86 and 87.

Section 71, supra, insofar as material or pertinent to the issues presented provides:

"A State Depository Board is hereby created to be composed of the Governor, Attorney-General and State Treasurer and said Board is authorized and directed to select a number of banks within the State of Oklahoma as depositories for all moneys and funds coming into the hands of the State Treasurer as the official depository; such banks must be in good standing and conducting a regular banking business * * *. There shall not be deposited in any one of such banks, of the public funds in the hands of the State Treasurer, an amount to exceed the amount of approved legal securities pledged by such banks therefor. * * *"

Section 86, supra, authorizes Board to designate any bank or banks in New York

City, under certain conditions, as depositories for public funds of Oklahoma. Section 87, supra, provides that the State Treasurer, with the approval of the State Depository Board, shall have the authority to deposit surplus public funds in his custody in banks on a time deposit basis. This provision further provides that such deposits shall be secured by surety bond or securities as now provided by law.

Board, apparently relying on the above statutes, and in particular Sec. 71, and the Administrative Procedures Act, Title 75 O. S.Supp.1968 Sec. 301 et seq., adopted the following order:

"(1) Effective September 1, 1969, all prior designation and selections of banks in Oklahoma as depositories for monies and funds coming into the hands of the State Treasurer as the official depository are revoked, annulled and rescinded.

"(2) Effective September 1, 1969, all national and state banks chartered in and having places of business in the State of Oklahoma are selected and designated as official depositories for all state moneys and funds coming into the hands of the State Treasurer subject to the following conditions and limitations:

"(a) All such banks must be members of, and have their accounts insured by the Federal Deposit Insurance Corporation.

"(b) Except as set out in sub-paragraph (c) below, no such bank shall be selected or designated as an official depository for state moneys or funds for any amount in excess of (a) 75% of its capital structure, or (b) $7,-500,000, whichever amount is the lesser. 'Capital structure' as used in this sub-paragraph means the sum of the following: (i) paid-in capital, (ii) surplus and (iii) undivided profits and reserves as shown by the banks last official call statement.

"(c) The State Treasurer may designate not more than four banks chartered in and having a place of business in the State of Oklahoma and meeting the requirements of sub-section (a) above as depositories of operating accounts which shall be exempt from the limitations imposed in subsection (b) above. 'Operating accounts' as used in this sub-paragraph shall mean accounts from which warrants and checks drawn by the proper officials of the State of Oklahoma are ordinarily paid."

Briefly summarized, in paragraph (1) Board revoked, annulled and rescinded all prior designations and selections of depository banks. In paragraph (2) and sub-paragraph (a) Board selected and designated all national and state banks chartered in and having places of business in the State of Oklahoma that are members of, and have their accounts insured by the F.D.I.C., as official depository banks.

Although Sec. 71, authorizes and directs Board to *select* a number of banks as depositories, Board *selected* and *designated* all national and state banks meeting certain requirements as depositories. However, the use of the additional word *designated* does not offend such section for the reason the words *selected* and *designated* are synonymous as employed in paragraph (1), (2) and sub-paragraph (a).

Since Sec. 71, authorizes and directs Board to select a number of banks within the state as depositories, we hold that Board had the statutory power and authority to promulgate paragraphs (1), (2) and sub-paragraph (a).

Under sub-paragraph (b) of Board's order, no bank shall be selected as a depository bank for any amount of money in excess of 75% of its capital structure, or $7,500,000.00, whichever amount is lesser. Exempted from these limitations are "operating accounts" which are covered by sub-paragraph (c) of Board's order.

Section 71, specifically places a limitation on the amount of funds that may be deposited in any depository bank by this proviso: "There shall not be deposited in

any one of such banks * * * an amount to exceed the amount of approved legal securities pledged by such banks therefor."

Section 72, specifies the security for deposits. Section 73 and Section 77, relate to the approval and examination of the securities by the Governor, Attorney General and State Treasurer. It is to be noted that these sections, which were enacted prior to the creation of the State Depository Board, require the approval by them in their official capacity as executive officers and not as members of the State Depository Board.

The effect of sub-paragraph (b), supra, is to place a limitation on the maximum amount that may be deposited in any depository bank and the maximum amount is determined by this standard: "There shall not be deposited in any bank any amount in excess of 75% of its capital structure, or $7,500,000.00, whichever amount is lesser."

The maximum amount established by the Legislature is to be determined by this standard: "There shall not be deposited in any depository bank any amount exceeding the amount of approved legal securities pledged by such bank."

It is apparent that Board's standard modified the legislative standard concerning the amount of money that may be deposited in any depository bank.

In the original enactment (sec. 6779 of the Revised Laws of 1910) the legislative standard was related to the capital structure of the depository banks. In 1933, the standard now set forth in sec. 71, was adopted and capital structure is not a determining factor nor is there a legislative limit placed on any depository bank so long as such bank has the required security pledged.

In examining previous legislative enactments, the Legislature has been very specific in setting forth the authority of Board. In 1933, when Board was first created (1933 S.L., Ch. 207, p. 493) it was authorized and directed to select a number of banks as depositories; such

banks were required to pay interest on the average daily balances at a rate to be fixed by Board; Board was authorized to designate the state fiscal agency in New York; and Board was authorized and directed to fix a uniform general rate of interest on the average daily balances of all public funds deposited in the various depository banks.

We have heretofore set forth Board's present authority. Although Sec. 71, authorizes and directs Board to select a number of banks as depositories for state funds, such section simply does not authorize Board to place a limitation on the amount of money that may be deposited in any depository bank. Board does not argue or rely on the provisions of Secs. 86 and 87, supra, as authority for adopting the order under consideration. We have examined those provisions and find they do not relate to the selection of depository banks.

 In our opinion, the State Treasurer and not Board, is given the statutory authority to determine the amount of money that may be deposited in a depository bank, and his authority is limited by legislative enactment to an amount not to exceed the amount of approved legal securities pledged by such banks therefor. It necessarily follows that Board did not have authority to place a limitation on the amount of money that may be deposited in a depository bank.

We hold that Board did not have the statutory authority to promulgate sub-paragraph (b) of its order.

 Under sub-paragraph (c) the State Treasurer may designate not more than four banks as depositories for "operating accounts". In other words, Board has placed a limitation on the number of banks that may be utilized by the State Treasurer as depositories for "operating accounts".

Under Sec. 71, supra, Board has authority to select a number of banks as depositories for all monies and funds coming into the hands of the State Treasurer as

the official depository. No provision is made in Sec. 71, authorizing Board to select a number of banks for time deposits and a different number for operating accounts. In Sec. 71, no mention is made of time deposits and operating accounts. It is therefore apparent that when a number of depository banks are selected by Board the Treasurer may utilize them for the deposit of time deposits and operating accounts, or either of them.

We hold Board did not have the authority to promulgate sub-paragraph (c) of its order.

■ We further hold that the Administrative Procedures Act, supra, may not be applied to assist Board in the instant proceeding. Banks have no vested or statutory right to be selected as a depository bank. The order under consideration concerns internal management. The Administrative Procedures Act is not applicable to rules and orders relating to the internal management of an agency or Board (see Secs. 301(2) (c), 301(6) of Title 75).

We hold that the State Depository Board had the statutory authority to promulgate paragraphs (1) and (2) and sub-paragraph (a) of its order dated July 24, 1969, and we refuse to issue the writ on the matters therein covered.

We further hold that the State Depository Board did not have the statutory authority to promulgate sub-paragraphs (b) and (c) of its order dated July 24, 1969, and the State Depository Board is prohibited from enforcing that portion of its order.

Writ granted in part and denied in part.

BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, HODGES and McINERNEY, JJ., concur.

LAVENDER, J., dissents.

LAVENDER, Justice (dissenting in part):

As I understand the majority opinion, it recognizes that the Depository Board has the power and authority to select the banks in which the Treasurer shall deposit the state's money but says that, in exercising this authority, it may not, in effect, limit the amount of money which the Treasurer may deposit in any such selected bank because the Legislature has prescribed that all deposits of state money must be secured and that this amounts to a limitation by the Legislature of the total amount of state funds which may be deposited in any one given bank. I respectfully urge that this is an over-technical treatment of what appears to be a clearly expressed delegation of authority to the Board.

While of course it is true the legislation creating the State Depository Board does not expressly empower that Board, in selecting banks, to refer to the relationship between capital structure of such a bank and the total amount of state funds to be therein deposited, I think it was not required that such express authority be spelled out in the statute. When the Legislature gave the Depository Board the power to select a number of banks and to confine that selection to only those banks which, in the sole opinion of the Depository Board, are banks "in good standing and conducting a regular banking business" (T. 62 O.S.1961, § 71), the Legislature invested the Board with the implied authority to establish reasonable criteria applicable to the authorized act of selecting such banks.

In City of Wilburton v. King, Atty. Gen. (1933), 162 Okl. 32, 18 P.2d 1075, we said, in the second paragraph of the Syllabus:

"In addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers."

In the body of the opinion we quoted from a New York case which said it a little differently:

"It is a well-established principle that statutes containing grants of power shall

be construed so as to include the authority to do all things necessary to make the object of the grant effectual, and to enable the donee of the power to accomplish the express purpose of the act."

For a case in which the attempted exercise of power was held invalid as not implied because it would not accomplish the express purpose of the legislation, see Application of State Board of Medical Examiners. In re Nathan (1949), 201 Okl. 365, 206 P.2d 211. See also 73 C.J.S. Public Administrative Bodies and Procedure § 50, pages 372–374, inclusive. And for a more recent application in this jurisdiction of the rule, see Oklahoma Tax Commission et al. v. Fortinberry Co., Inc., et al. (1949), 201 Okl. 537, 207 P.2d 301.

I think it is necessarily implied in 62 O.S. 1961, § 71 that the Board may consider the capital structure of the bank in which such funds are to be deposited in relation to the total amount of public money which should be placed in such bank. It is very possible, I think, that a bank could be over extended in state funds on deposit to such an extent that a sudden need for such funds by the state would result in the bank being placed in a position that it could not honor its obligations. If a bank should be unable to respond when called upon to return state deposits and the state would (insofar as such deposits exceed the federally insured amount) be compelled to sue upon the security and establish the amount and priority of its lien thereon, such remedy might prove to be almost totally inadequate for the state's purposes. Such litigation would be costly in both time and expense and in the meantime the state would be without those funds with which to honor its obligations to furnish services to its citizens and discharge its other obligations.

As I read the statutory provision requiring that all deposits of state funds be secured, it merely furnishes a form of insurance or a guaranty that the bank will be able to respond when the state wishes to withdraw its funds. It is very similar to the protection afforded depositors by federal deposit insurance. To assign such a statutory requirement the effect claimed for it, that of preventing the Board from considering the relationship between the capital structure of a bank and the amount of state money which such bank may be selected to receive as a depository, is to in effect defeat the intent of the legislation creating the Depository Board. If that Board is to be limited to simply naming some banks in which the state money is to be deposited and may not consider the ability of the banks to respond when they are called upon to return the state's money, then I fail to see any real purpose in the legislation establishing a Depository Board. Surely the legislation creating the Board and giving it the authority to select banks in good standing had for its intent and purpose the protection of the people's money. I would interpret the legislation to give effect to such purpose.

I think paragraph (2)–(b) of the order of the Depository Board is a valid exercise of the authority of that Board to consider the "standing" of banks which are to receive deposits of state funds and I don't think the requirement of the statute in question, to the effect that any money which is deposited must first be secured, is a limitation upon the power of the Board to select as official depositories banks in "good standing" by the Board relating the total amount to be deposited to the capital structure of the bank involved. It is noted that no complaint is made that the proposed rule of the Board is arbitrary or unreasonable in its approach to the problem. The petitioner argues that the Board simply doesn't have the authority to, in effect, define the "good standing" of a bank to receive deposits of state money. I would hold that it does.

I respectfully dissent to that portion of the majority opinion which grants the writ of prohibition.