The office of the Attorney General is in receipt of your opinion request, wherein you ask, in effect, the following question: May the Department of Wildlife Conservation pay the cost of optional dependent coverage for its employees? The Department of Wildlife Conservation is a constitutionally created body. Okla. Const., Article XXVI, Section 1 through Article XXVI, Section 4. Also, there are specific statutes found at 29 O.S. 1-101 [29-1-101], et seq. (1971), which executes the above-cited constitutional amendments relating to the Department of Wildlife Conservation. The Oklahoma Group Health and Life Insurance Board, hereinafter referred to as the "Board," 74 O.S. 1303 [74-1303](2) (1977). The Board is created pursuant to 74 O.S. 1301 [74-1301] et seq. (1971). The purpose of the State Employees Group Health Life Insurance Act, hereinafter referred to as the "Act," is stated as follows in 74 O.S. 1302 [74-1302] (1971): "It is hereby declared that the purpose of this statute is: "(a) To provide uniformity in Accident and Health Insurance and/or Benefits Coverage and Life Insurance on all employees of the State of Oklahoma; "(b) To enable the state to attract and retain qualified employees by providing health and life insurance benefits similar to those commonly provided in private industry; "(c) To recognize and protect the state's investment in each permanent employee by promoting and preserving good health and longevity among state employees; "(d) To recognize a service to the state by elected and appointed officials by extending to them the same health and life insurance benefits as are provided herein for state employees; and "(e) To recognize long and faithful service, and to encourage employees to remain in state service until eligible for retirement by providing health and life insurance benefits for employees." Title 74 O.S. 1303 [74-1303](b) (1977) defines what "employee" means as related to the State Employees Group Health and Life Insurance Act. " 'Employee' means and includes each officer or employee in the service of the State of Oklahoma who, after January 1, 1966 received his compensation for service rendered to the State of Oklahoma on a warrant issued pursuant to a payroll certified by a department or by an elected or duly appointed officer of the state or who receives payment for the performance of personal services on a warrant issued pursuant to a payroll certified by a department and drawn by the State Auditor upon the State Treasurer against appropriations made by the Legislature from any state fund or against trust funds held by the State Treasurer, who is employed in a position normally requiring actual performance of duty during not less than one thousand (1,000) hours per year, and whose employment is not seasonal or temporary, except that a person elected by popular vote will be considered an employee during his tenure in office. Provided, however, that employees who are otherwise eligible who are on approved sick leave without pay shall be eligible to continue coverage during such leave not to exceed twelve (12) months from the date the employee goes on such leave provided the employee pays the full premiums due." Title 74 O.S. 1303 [74-1303] (1977) also contains other definitions relevant to this opinion. Title 74 O.S. 1303 [74-1303](d) (1977) defines "health insurance plan" to mean "a self-insured plan by the State of Oklahoma for the purpose of paying the cost of hospital and medical care up to maximum coverage provided by the Act." The Act includes provisions for coverage of dependents. 74 O.S. 1303 [74-1303](f) and 74 O.S. 1309 [74-1309] (1977). The exemptions from the Oklahoma Group Health and Life Insurance Act are found in 74 O.S. 1314 [74-1314] (1977). That section states as follows: "The provisions of the State Employees Group Health and Life Insurance Act shall not apply to the employees and officers of the Oklahoma Employment Security Commission nor to the Oklahoma State System of Higher Education nor to the Commissioners of the State Department of Transportation nor to any member of an administrative board or commission of any agency, board, authority or commission of the State of Oklahoma unless such member is a full-time salaried employee; provided, however, that said Oklahoma Employment Security Commission and any state system or institution of higher education may elect to come under the provisions of said act." The Department of Wildlife Conservation is not enumerated as an exempted state agency from the Group Health Life Insurance Act. However, there appears to be a conflict between the authority of the Oklahoma Wildlife Conservation Commission to govern by rule and regulation and the Department of Wildlife Conservation under the Constitution, Article XXVI, Section 1 and the exercise of the authority of the Legislature to provide generally for the compensation of health and welfare of state employees. The Department of Wildlife Conservation Commission is not exempt from the Administrative Procedures Act and, therefore, comes within the purview of the definitions of the Administrative Procedures Act. 75 O.S. 301 [75-301] et seq. (1971). In the case of Ray v. Thompson, Okl. 458 P.2d 300 (1969), the Supreme Court of the State of Oklahoma construed the authority of the Commission to "govern" the department as being restrictive to its "internal management" when there arose a conflict between the constitutional authority of the Commission and the application of the Administrative Procedures Act. 75 O.S. 301 [75-301] et seq. (1971). The court in Ray v. Thompson, supra, did not elaborate on what functions of the Wildlife Conservation Department fall within its internal management. Title 75 O.S. 301 [75-301](2) (1978) gives a definition of a rule as follows: " 'Rule' means any agency statement of general applicability and future effect that implements, interprets or prescribes substantive law or policy, or prescribes the procedure or practice requirements of the agency. The term includes the amendment or repeal of a prior rule but does not include (A) the issuance, renewal or denial of licenses; (B) the approval, disapproval or prescription of rates; (C) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public; (D) interagency memoranda; or (E) declaratory rulings issued pursuant to 75 O.S. 308 [75-308] of this title; . . ." Thus, the question resolves around what constitutes internal management. In a law review article, "Oklahoma's New Administrative Procedure Act," authored by Maurice H. Merrill, 17 Okl. L. Rev. 1, (1964) at pg. 9, a cursory view of what internal management, pursuant to 75 O.S. 301 [75-301](2) (1978), is given: "The third exception, 'statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public,' obviously, is intended to exclude the 'housekeeping' functions of agencies, as distinguished from the occasions when they are establishing norms for the conduct of the public. These would include such things as rules organizing the structure of the agency, prescribing the conduct of its staff, and the internal management of its business." Furthermore, what constitutes internal management is narrowly construed. Boschman v. Dumbe, 107 Cal.Rptr. 596, 31 Cal. app. 927 (1973); Department of Air Force v. Rose,425 U.S. 352, 48 L.Ed.2d 11, 96 S.Ct. 1592 (1976). Therefore, it is concluded that internal management deals with matters of day-to-day business such as policies concerning leave time, time that employees would come and leave work, and other specific daily duties the employees are to engage in. In analyzing the problem presented, a review of several Attorney General's opinions is in order. Of particular interest, are Opinions Nos. 74-152 and 80-157. Opinion No. 74-152 (74 Okl. Op. A.G. N.90) stated that the Department of Wildlife Conservation could not purchase liability insurance without statutory authorization. As the purchase of liability insurance has been held to be a waiver of sovereign immunity, the decision to purchase liability insurance necessarily impacted upon broader public policy concerns and simply the "internal management of the Department." Consequently, the absence of statutory authorization to purchase such insurance would preclude the existence of authority to secure insurance coverage as the Legislature is the appropriate branch of government to decide whether the prerogative of sovereignty ought to be waived. In Opinion No. 80-157, the authority of the Wildlife Conservation Commission to purchase dental insurance for its employees was also considered. On the basis of prior opinion prohibiting the purchase of any form of insurance without statutory authorization, (See Atty. Gen. Ops. Nos. 74-152, 73-265, 72-165, and 71-356) Opinion No. 80-157 concluded that the Department could not purchase dental insurance. On reading of the constitutional and statutory provisions governing the Wildlife Conservation Commission, there is no clear basis to derive a rule or regulation allowing the Wildlife Conservation Commission to establish a group health life insurance program. A public body, as is the Wildlife Conservation Commission, must base its rules on the constitutional and statutory authority creating it and within the clear policy of that authority. Casualty Reciprocal Exchange v. Sutfin, 196 Okl. 567, 166 P.2d 434
(1945); Pannell v. Farmers Union Coop. Gin Ass'n. of Sterling, 192 Okl. 652, 138 P.2d 817 (1943); W. S. Dicky Clay Mfg. Co. v. Ferguson Investment Co., Okl. 388 P.2d 300
(1963). On review of the constitutional provisions creating the Wildlife Conservation Commission and the statutes executing those constitutional provisions, there is no clear authority for the Oklahoma Wildlife Conservation Commission to create a group health life insurance program. The Oklahoma Group Health Life Insurance statutes unequivocally sets out as one of the purposes of the Act "to provide uniformity and accident health life insurance and/or benefits coverage and life insurance on all employees of the State of Oklahoma." 74 O.S. 302 [74-302](a) (1971). The Group Health Life Insurance Act is general legislation which applies to all public employees unless there is specific exemption. The Wildlife Conservation is not one of the exemptions enumerated in the Group Health Life Insurance Act. Rules must be in aid of and not in the derogation of legislative purposes. Application of State Board of Medical Examiners, Okl.206 P.2d 211 (1949). For the Wildlife Conservation Commission to set up a Group Health Life Insurance Program would be in derogation of the Oklahoma Group Health Life Insurance Act. This is not the intent of the State Legislature of Oklahoma. It is, therefore, the official opinion of the Attorney General that your question be answered as follows: 1. The Oklahoma Wildlife Conservation Commission does not have the authority to permit the department of Wildlife Conservation to purchase hospitalization insurance coverage for dependents of the Department employees as such coverage is provided under the Oklahoma Group Health and Life Insurance Plan pursuant to preemptive legislation. 2. The Oklahoma Wildlife Conservation Commission may not, in absence of the necessary legislation, pass rules authorizing Department of Wildlife Conservation to create rules and regulations setting up a group health life insurance plan. (STEPHEN F. SHANBOUR) (ksg)