**Cynthia Lynne DiMAURO, M.D., now Henderson, Appellant,**

v.

**OKLAHOMA STATE BOARD OF MEDICAL EXAMINERS, Appellee.**

**No. 67305.**

Supreme Court of Oklahoma.

Feb. 28, 1989.

Lester D. Henderson, Sapulpa, for appellant.

Daniel J. Gamino & Associates, P.C. by Daniel J. Gamino, Oklahoma City, for appellee.

HODGES, Justice.

The question on appeal before us is whether the decision of the appellee Oklahoma State Board of Medical Examiners (now known as the State Board of Medical Licensure and Supervision, 59 O.S.Supp. 1987 § 481.1) to deny appellant's application for licensure was supported by the evidence.

In March, 1985, appellant applied for an Oklahoma license to practice medicine and surgery and to take the Federation of State Medical Boards of the United States, Inc., Licensing Examination (FLEX). The application listed appellant as having received her M.D. from the American University of the Caribbean in 1982, and as having met all the requirements of the Educational Commission for Foreign Medical Graduates in 1983.

The appellee thereafter informed the appellant by letter that her application to take the FLEX had been approved. Appellant took the FLEX in June, 1985, and scored 74 on Component I and 79 on Component II. A score of 75 is required on each component to pass. Appellant's subsequent application to retake Component I was approved and in December, 1985, appellant received a passing score of 76.

However, in May, 1986, appellee notified appellant that her Application for Licensure had been denied "because of lack of satisfactory evidence to establish a course of medical education equivalent to that provided by the University of Oklahoma College of Medicine." Appellant requested and received a hearing before appellee on September 6, 1986, at which time appellant's application was again denied. Appellant then properly perfected this appeal directly to the Supreme Court in accordance with our holding in *State ex rel. State Bd., etc. v. Naifeh,* 598 P.2d 225 (Okla. 1979).

I.

Appellant's first argument asserts that by statute the appellee must determine the sufficiency of the educational qualifications of an applicant prior to admission for the FLEX and a successful completion of the FLEX entitles appellant to licensure as a matter of law.

By requiring licensing of persons involved in the practice of medicine and other health-related occupations the state is exercising its police power in the interest of

the protection of its citizens. The field of medicine is a profession that impacts directly on the health and welfare of the public. Therefore, the creation of statutes designed to regulate persons choosing to practice medicine within the state is within the constitutional power of the state legislature.

The statute in question is 59 O.S. § 493 which in 1986 read in part as follows:

(a) The State Board of Medical Examiners shall admit any applicant to the regular examination for licensure to practice medicine and surgery within the meaning of Section 492 of this title, who makes application therefor verified by oath upon forms provided by the Board, and accompanies the application with the fee as fixed by the Board of Medical Examiners sufficient to cover the cost and expense of the Board in processing such application. An applicant, *to be eligible for examination,* must present satisfactory evidence of identification; that he is of good moral character and is not addicted to habitual intemperance or the habitual use of habit-forming drugs; that he has not been convicted of a felony or a crime involving moral turpitude; that he has never been guilty of unprofessional conduct as defined in Section 509 of this title; that his medical license has never been revoked within any other state for cause, and that he is not suffering with active pulmonary tuberculosis or a draining tubercular lesion or venereal disease.

*It is further provided that* the applicant must: (a) submit satisfactory evidence that he is a graduate of a legally chartered medical college or university, the requirements of which for graduation shall have been, at the time of such graduation, in no particular less than those prescribed by the Association of American Medical Colleges or the Council on Medical Education and Hospitals of the American Medical Association for that particular year; or (b) submit satisfactory evidence that he has passed such examinations *as the Board may require to determine his educational qualifica-*tions *to take the regular examinations for licensure to practice medicine and surgery.*

....

....

(b) Where an applicant is a graduate of a foreign medical school, but the Board has reason to believe that the applicant may have professional qualifications, *as of the date of his application,* through recognized postgraduate work done in this country, or through professional experience, or both, which have given him premedical training substantially equivalent to that offered in the premedical course at the University of Oklahoma, or professional training substantially equivalent to that of the medical school of that university, the Board may make such further inquiry, including a personal interview, as satisfies the Board that he has such equivalent premedical and medical training. *If a majority of the Board is so satisfied, it may waive the educational prerequisites imposed by the laws of this state, and admit the applicant to examination.....* In lieu of the foregoing inquiry into the premedical and medical qualifications of such an applicant, the Board may accept, either in whole or in part, the marks received by such applicant in examinations conducted by the educational council for foreign medical graduates..... (Emphasis added).

Appellee argues in its brief that the application for the FLEX and the application for licensure in Oklahoma are not the same thing, and, therefore, a review of the educational requirements is not made until an applicant has applied for a license in Oklahoma. However, upon a review of the application submitted by appellant we find one application titled "Oklahoma State Board of Medical Examiners, Application for Flex–Examination." Part 9 of that application is an "Applicant's Oath" signed by the appellant and notarized which reads as follows:

"I, *Cynthia L. DiMauro* hereby certify under oath that I am the person named in the application for license to

practice medicine and surgery in the State of Oklahoma, that all statements I have made herein are true; that I am the original and lawful possessor of the medical school diploma submitted herewith as a credential by photographic reproduction; that the photograph is a true resemblance of me and was made within the last 12 months; that in consideration of the issuance to me of a license to practice medicine and surgery in the State of Oklahoma I hereby pledge that I shall abstain from deceptive or fraudulent methods of practice, from immoral, unprofessional and unethical conduct; I shall abstain from professional association with, and shall not act as a shield for, an unlicensed practitioner or other person and I hereby agree that violation of this pledge shall constitute cause for the revocation of my medical license."

The above language is a part of the appellant's FLEX application and appears to be indicative of the intent of appellant to pursue licensure in the State of Oklahoma. While this application has many required documents attached to it, there is no second or separate application in the record apart from the one application already mentioned. Therefore, it is easy to see how appellant was at least confused by the portion of § 493(b) referring to "the date of his application" and language regarding admission of "the applicant to examination" once the Board is satisfied of the educational equivalency requirements. However, it should be noted that the following language was included as a part of the "General Instructions For Applying For Admission to the FLEX Examination:"

"Even though your application is complete and all requirements are satisfied and you pass the FLEX examination, there is no guarantee that the Board will approve your application for licensure. The Board may find exceptions or make discoveries which will cause them not to approve an application for licensure. In such event, the Board action will clearly state the basis upon which such exceptions have been made and you will be notified by mail. The Oklahoma Board of Medical Examiners may, at its discre-

tion, require further proof of clinical competency. You will be notified if this should apply to you."

These instructions are set out and capitalized. Their purpose appears to be specifically for situations such as the one before us. The appellant, while filling out her application in compliance with the rest of the instructions surely could not miss this statement. The appellee's position on the question of whether the appellee would automatically license all successful FLEX applicants is clear: there are no such guarantees made. Appellant's view is that the Board's power is quite limited under § 493 in that, once she was admitted to take the FLEX and passed, it was too late for the Board to question her background. We do not read § 493 to put such severe limits on the Board's discretion. As we have stated earlier, this review of the qualifications of persons entering the medical profession in Oklahoma is a constitutionally authorized exercise of police power. As such, the appellee's review of applications before it must be one that thoroughly screens all applicants and their backgrounds. Therefore we must look to the actual scrutiny and review of the application given by the appellee regardless of whether it occurred before or after the appellant passed the FLEX.

## II.

■ Appellee's next argument contends that the denial of her application after having met the testing requirements constitutes denial of equal protection under the Fourteenth Amendment of the United States Constitution. In reviewing the decision we have looked at the entire record to determine whether the result was supported by substantial evidence. *Davis v. State Board of Medical Examiners*, 74 P.2d 610 (Okla.1937). It has been held that the same standards of review apply to both the district court and the appellate court when making determinations on appeal from administrative agency rulings. *Seely v. Oklahoma Horse Racing Com'n*, 743 P.2d 685 (Okla.App.1987). The appellee's purpose in examining the educational back-

ground of each applicant is to determine if the medical education received is equivalent to the education a medical student would receive at the University of Oklahoma Medical Center. The state medical center is used as a standard of comparison for graduates of foreign medical schools whose curriculum has not been reviewed or rated by the Association of American Medical Colleges or the Council on Medical Education and Hospitals of the American Medical Association for that particular year. In making this comparison, and thereby carrying out its statutorily imposed duty, the appellee is required to use its judgment and discretion. *Application of State Board of Medical Examiners*, 206 P.2d 211 (Okla. 1949).

During the appellant's hearing several questions were asked by members of the Board regarding the contact appellant had throughout her medical education and clinical training with instructors and hospitals that had formal affiliation agreements with approved medical teaching institutions. The only clinical training the appellant had participated in with such an affiliation was a one year residency in physical medicine and rehabilitation at Parkland Hospital, University of Texas Health Science Center in Dallas. As a part of her application the appellant had included an evaluation from a doctor with whom she had worked while at Parkland Hospital. This residency and evaluation were mentioned briefly at the hearing. Another area discussed at the hearing covered the teacher-student ratio at the American University of the Caribbean while the appellant was a student. The total number of full time faculty was 20 while there were 800 students.

After reviewing all of this information and the appellant's application the appellee Board voted unanimously to reject the application because the appellant had failed to show that she had completed a medical education or professional training substantially equivalent to that required by the University of Oklahoma College of Medicine. 59 O.S. § 493(b). We find this decision to be supported by substantial evidence possessing such substance and relevance that induces conviction that the deci-

sion made was proper. *Hold Oil Corp. v. Corp. Com'n of State of Okl.*, 746 P.2d 692 (Okl.App.1987).

Our review of the decision must include a determination of whether the decision was in any way arbitrary. *Atewooftakewa v. Udall*, 277 F.Supp. 464 (W.D.Okl.1967). We find that the decision as rendered by the appellee had a rational basis and therefore did not deny appellant due process or equal protection. The discretion of the appellee was exercised in determining whether or not an educational equivalency had been proven by the appellant. Such decision that appellant had *not* met the statutory burden of proof was not the result of any discriminatory agenda on the part of the appellee. The information presented by appellant was complete in her application and supplemented by the hearing. The decision was made after all of the information had been reviewed and therefore no abuse of discretion occurred. *Hennessey v. Independent Sch. Dist. No. 4, Lincoln Cty.*, 552 P.2d 1141 (Okla.1976).

The decision of the Oklahoma State Board of Medical Examiners is AFFIRMED.

HARGRAVE, C.J., and LAVENDER, SIMMS, DOOLIN, and ALMA WILSON, JJ., concur.

OPALA, V.C.J., and KAUGER and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting:

The Board of Medical Examiners has misread the statute in question. The Board believed that after a graduate of a foreign medical school was admitted to take the FLEX Exam and passed it, then the Board still had discretion to inquire into the student's educational background and refuse licensure if that education was not comparable to what she might have received in the state of Oklahoma. (Tr. 12, 13) All parties agree that the eligibility for admittance to the exam and for licensing is governed by statute. Specifically the statute controlling graduates of foreign medi-

cal schools was 59 O.S.1986 § 493(b),[1] which at the time read:

"Where an applicant is a graduate of a foreign medical school, but the Board has reason to believe that the applicant may have professional qualifications, as of the date of his application, through recognized postgraduate work done in this country, or through professional experience, or both, which have given him premedical training substantially equivalent to that offered in the premedical course at the University of Oklahoma, or professional training substantially equivalent to that of the medical school of that university, the Board may make such further inquiry, including a personal interview, as satisfies the Board that he has such equivalent premedical and medical training. If a majority of the Board is so satisfied, it may waive the educational prerequisites imposed by the laws of this state, *and admit the applicant to examination. ...*" (Emphasis added)

This subsection contained the *only* statutory reference to medical training substantially equivalent to that available at O.U. And, as specifically as the statute writer could write, it did not apply to post-exam licensing. It applied, rather, to the Board's decision as to whether or not to "admit the applicant to examination." Nothing more nor less.

Continuing in the statutes, § 494 provided what was required once an applicant had been admitted to the examination:

"The applicant, having been admitted to the examination in those subjects required for graduation from approved medical schools and such other subjects as may be required by the Board, *shall be required* to attain an average grade of seventy-five percent (75%) in the fields of basic and clinical medical information and in the application of his knowledge in clinical medical situations. Should the applicant's grade fall below an average of seventy-five percent (75%), reexamination in all or part of the examination shall be required. ...." (Emphasis added)

Section 494 thus "required" the applicant to score 75% or higher. What happened if she did so? Section 495 provided the answer.

"When an applicant shall have shown himself qualified *as herein required,* a certificate, in form approved by the board and signed by all members of the board, or a quorum thereof, and attested by the seal of the board, *shall be issued to him by said board, authorizing him to practice medicine and surgery* within the meaning of this Act, within the State of Oklahoma." (Emphasis added)

In other words, once the foreign graduate is admitted to take the exam and passes it, discretion is no longer statutorily present at that late date to evaluate the applicant's medical school. "Shall be issued" as appears in § 495 means just that, the Board's concerns notwithstanding.[2]

Beyond the clear language of the statutes, moreover, the Board's own rules adopted September 30, 1985 confirm that attaining a passing score on the required examination entitles applicants to a medical license. Rule four of Article five of those rules provides that

"[s]ubmission of proof of scores of an overall average of 75 percent or higher on the Federal Licensing Examination *shall constitute satisfactory evidence of the applicant's educational qualification for licensure.* Art. V, Sec. C(4) Rules and Regulations, Oklahoma State Board of Medical Examiners (emphasis supplied).

The clear language of both the statutes and the Board's own rules require that Dr. Di Mauro be issued a license to practice

---

1. The licensure statutes were substantially amended in 1987, but those amendments do not affect the present litigation because "absent a plain legislative intent to the contrary, statutes are presumed to operate prospectively only." *Trinity Broadcasting Corp. v. Leeco Oil Co.,* 692 P.2d 1364, 1366 (Okla.1984).

2. Those concerns have apparently been instrumental in causing the statutes to be amended effective 1987 as mentioned in footnote one.

medicine in Oklahoma. She was admitted to the FLEX examination and attained a passing score. Her score satisfied the Board's rule and the statutory prerequisites. The mandatory language of Section 495 of Title 59 required the Board to issue her a certificate to practice medicine in this state.

The Board's witness testified that if she had scored a "90%" on the FLEX "it would help sway us a little bit". Today's decision affirming the Board establishes precedent for the potentially arbitrary and capricious use of authority by the Board. We have long recognized that

> "the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience, or in effect nullified for the same expediency." *Application of State Board of Medical Examiners in re Nathan,* 201 Okl. 365, 206 P.2d 211, 215 (1949).

It is regrettable that the court perpetuates what I believe to be an erroneous reading of the former statutes. Because the majority's opinion authorizes administrative discretion in defiance of the clear statutory language I must respectfully dissent. I am authorized to state that Vice Chief Justice Opala and Justice Kauger do likewise.