Dear Executive Director Clark,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the Oklahoma Chiropractic Practice Act, 59 O.S.2001, §§ 161.1-161.20, or the Oklahoma State Board ofChiropractic Examiners' administrative rules, OAC140:1-1-1 — 140:25-3-8, authorize a licensed chiropractor toadminister injections such as flu shots, vitamins and othertherapeutic agents?
 2. Does the Oklahoma Chiropractic Practice Act or the OklahomaState Board of Chiropractic Examiners' administrative rulesauthorize a licensed chiropractor to perform diagnosticprocedures such as "PAP smears and other tests requiring tissuescrapings"?
 Introduction
¶ 1 Your questions relate to the scope of practice for the healing art of chiropractic. As provided by the Oklahoma Chiropractic Practice Act ("Act") at 59 O.S. 2001, § 161.2[59-161.2],
chiropractic is:
 A. [T]he science and art that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic, sanitary and therapeutic measures incident thereto in humans. The scope of practice of chiropractic shall include those diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners.
Id.
¶ 2 Thus, the scope of practice for a chiropractor includes "those diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners." Id.
¶ 3 In addition to this general language, the Legislature has specifically approved, and specifically prohibited, certain procedures. For instance, chiropractors are prohibited from performing surgery or "using electricity in any form for surgical purposes, including cauterization." Id. § 161.12(B)(5). Also, chiropractors shall not unlawfully possess, prescribe or administer "any drug, medicine, serum or vaccine." Id. § 161.12(B)(7). Chiropractors may, however, possess, prescribe or administer, "by a needle or otherwise, vitamins, minerals ornutritional supplements." Id. (emphasis added). Since the Legislature has specifically authorized chiropractors to administer certain injections, we turn to your first question to determine whether chiropractors may inject "flu shots, vitamins and other therapeutic agents."
 I. Injections
¶ 4 The Act specifically allows chiropractors to inject, by a needle, vitamins, minerals or nutritional supplements. 59 O.S.2001, § 161.12[59-161.12] (B)(7). Before a chiropractor is authorized to inject such substances, however, the Board of Chiropractic Examiners' ("Board") administrative rules require certification.
 No chiropractic physician shall administer or cause to be used any injectable vitamins, minerals or nutritional supplements unless said chiropractic physician holds a certificate issued by the Board pronouncing that said chiropractic physician is proficient in the administration and use of such injectables. The Board shall establish an examination to be used by the Board to determine the proficiency [sic] any a chiropractic physician who seeks certification from the Board. Provided that any certificate issued before January 1, 1994, shall not require examination.
OAC 140:15-5-1 (1994).
 Any chiropractic physician who desires to administer vitamins, minerals or nutritional supplements by means of injectable procedures shall make application, on a form prescribed by the Board, for a certificate for such purpose. Each such chiropractic physician shall submit to the Board documentary evidence of satisfactory completion of at least twelve (12) hours of education and training in the administration and use of such injectables. Such education and training shall be obtained at an educational program which has been approved by the Board.
OAC 140:15-5-2 (1994).
¶ 5 You first ask whether a chiropractor may inject flu shots, vitamins and other therapeutic agents. The plain language of 59O.S. 2001, § 161.12[59-161.12] (B)(7) authorizes a chiropractor to inject vitamins. This same section of law prohibits a chiropractor from administering a "vaccine." "Vaccine" is not a statutorily defined term. Words in a statute must be understood in their ordinary meaning, except when a contrary intention plainly appears or when otherwise defined by the Legislature. 25 O.S. 2001, § 1[25-1]. The ordinary definition of "vaccine" is:
 [A] preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms that is administered to produce or artificially increase immunity to a particular disease.
Webster's Third New International Dictionary 2527 (3d ed. 1993).
¶ 6 Assuming, therefore, that a "flu shot" is a vaccine administered to increase a person's immunity to influenza, it is a prohibited procedure under the Act.
¶ 7 The third substance you ask about with regard to injections is whether a chiropractor may inject a "therapeutic agent." Only vitamins, minerals or nutritional supplements are permitted to be injected. No "other therapeutic agents" are permitted to be injected. 59 O.S. 2001, § 161.12[59-161.12] (B)(7).
¶ 8 A properly licensed and certified chiropractor may administer "vitamins, minerals or nutritional supplements" but not a "drug, medicine, serum or vaccine." Id.; OAC 140:15-5-1-2. Thus, in answer to your first question, licensed chiropractors, if certified by the Board, may administer injections for vitamins but may not inject vaccines, including influenza vaccines.
 II. Diagnostic Procedures
¶ 9 You next ask whether the Oklahoma Chiropractic Practice Act or the Oklahoma State Board of Chiropractic Examiners' administrative rules authorize a licensed chiropractor to perform diagnostic procedures such as "PAP smears and other tests requiring tissue scrapings."
¶ 10 As initially pointed out above, the scope of chiropractic practice includes "diagnostic and treatment services and procedures which have been taught by an accredited chiropractic college and have been approved by the Board of Chiropractic Examiners." 59 O.S. 2001, § 161.2[59-161.2] (A).
¶ 11 In 1992 an Attorney General Opinion addressed in detail the scope of chiropractic practice as follows:
 Chiropractic physicians are authorized to practice in all traditional areas of chiropractic, and the Board of Chiropractic Examiners may create areas of specialization related to this health field. 59 O.S. 1991, § 161.6[59-161.6]. Chiropractic physicians, however, cannot be authorized to practice in areas not related to chiropractic merely because the Board approves classes taught at an approved chiropractic college. The second sentence of § 161.2 must be read in conjunction with the first sentence so as to limit the area of practice to those diagnostic and treatment services and procedures of a chiropractic nature. While this would serve to allow specialization, a chiropractic physician would not, for example, be authorized to dispense dangerous drugs as this is outside the scope of the traditional practice of chiropractic.
 Nor would this allow the Board to create areas of specialization outside of this traditional scope.
A.G. Opin. 92-13, 29 (footnote omitted).
¶ 12 For instance, even if an "accredited chiropractic college" has taught a class in any particular procedure, the Board may not "approve" the procedure as being within the scope of chiropractic practice unless the procedure is related to the "science and art that teaches health in anatomic relation and disease or abnormality in anatomic disrelation." 59 O.S. 2001, § 161.2[59-161.2] (A).
¶ 13 Additionally, the Board has not promulgated administrative rules setting forth any chiropractic diagnostic procedure.[1] A "rule" is defined as an "agency statement . . . of general applicability and future effect that implements, interprets or prescribes law or policy." 75 O.S. 2001, §250.3[75-250.3] (15).
¶ 14 The Legislature has given the Board broad authority to approve diagnostic and treatment services which relate to anatomic relation but the Board has yet to promulgate a rule which describes such services.
 No agency rule is valid or effective against any person or party, or may be invoked by the agency for any purpose, until it has been promulgated as required in the Administrative Procedures Act.
Id. § 308.2(A).
¶ 15 Administrative rules are authorized because they are a means to help accomplish a legislative purpose expressed in a statute. In re State Bd. of Med. Exam'rs, 206 P.2d 211, 215
(Okla. 1949). "Attention must be directed, not to the mode by which a "rule" is created, but rather to its impact or effect."Grand River Dam Auth. v. State, 645 P.2d 1011, 1016 (Okla. 1982). Consequently, only through the administrative rulemaking process may the Board implement and interpret those diagnostic services which are chiropractic in nature.
¶ 16 In addition to the Board approval of diagnostic services,59 O.S. 2001, § 161.2[59-161.2] (A) requires that such procedures must have been taught by an accredited chiropractic college. Therefore, at the time the Board is considering the adoption of a rule which approves chiropractic diagnostic and treatment services, it should make a finding that the particular procedure has been taught by an accredited chiropractic college.
¶ 17 Your specific question asks whether the performance of diagnostic procedures such as PAP smears and tissue scrapings are authorized. At this time, such procedures are not authorized due to the absence of administrative rules approving the procedures.See OAC 140:1-1-1 — 140:25-3-8. Whether the performance of diagnostic procedures such as PAP smears and tissue scrapings relate to the "science and art that teaches health in anatomic relation" and have been taught by an accredited chiropractic college (59 O.S. 2001, § 161.2[59-161.2] (A)) is a fact question outside the scope of an Attorney General Opinion. 74 O.S. 2001, §18b[74-18b] (A)(5).
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Licensed chiropractors, if certified by the Board ofChiropractic Examiners ("Board"), may administer injections forvitamins, minerals or nutritional supplements, but may not injectdrugs, medicines, serums or vaccines. Consequently, chiropractorsmay not inject influenza vaccines. 59 O.S. 2001, §161.12(B)(7); OAC 140:15-5-1-2.
 2. The scope of practice for a chiropractor includes the"science and art that teaches health in anatomic relation anddisease or abnormality in anatomic disrelation" which includes"those diagnostic and treatment services and procedures whichhave been taught by an accredited chiropractic college and havebeen approved by the Board of Chiropractic Examiners." 59 O.S.2001, § 161.2(A).
 3. The Board has the statutory authority to approve diagnosticand treatment services performed by chiropractors. 59 O.S.2001, § 161.2(A). The Board has yet to promulgate anadministrative rule which provides for approved diagnostic andtreatment services. No agency rule is valid or effective againstany person or party, or may be invoked by the agency for anypurpose, until it has been promulgated as required in theAdministrative Procedures Act. 75 O.S. 2001, § 308.2(A).Thus, the performance of diagnostic procedures such as PAP smearsand tissue scrapings are not currently authorized by the OklahomaChiropractic Practice Act or the Oklahoma State Board ofChiropractic Examiners' administrative rules.
 4. Whether the performance of diagnostic procedures such asPAP smears and tissue scrapings relate to the "science and artthat teaches health in anatomic relation" and have been taught byan accredited chiropractic college is a fact question outside thescope of an Attorney General Opinion. 74 O.S. 2001, §18b(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
GRETCHEN ZUMWALT — SMITH Assistant Attorney General
[1] The Board has the authority to promulgate rules pursuant to the Oklahoma Administrative Procedures Act. 59 O.S. 2001, §161.6[59-161.6] (A).