STATE of Oklahoma ex rel. the STATE BOARD OF AGRICULTURE OF OKLAHOMA, Plaintiff in Error,

v.

N. W. WARREN, d/b/a Warren Grocery, Hollis, Oklahoma, Defendant in Error.

No. 38232.

Supreme Court of Oklahoma.

Oct. 21, 1958.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., Raymond Barry, County Atty., Harmon County, Hollis, for plaintiff in error.

Harry C. Hicks, William M. Fancher, Hollis, for defendant in error.

CORN, Vice Chief. Justice.

N. W. Warren, d/b/a Warren Grocery, owned and operated a grocery store in Hollis. He also owned a flock of hens. He displayed, offered for sale and sold eggs produced therefrom in his store. No attempt was made to comply with 2 O.S.Supp. Sec. 5, subarticles 21 to 30. In addition Mr. Warren bought eggs from others. These eggs were not offered for sale to the consumer but were sold to dealers.

State of Oklahoma ex rel. the State Board of Agriculture brought this action against Warren seeking a judgment, perpetually enjoining and restraining him from violating the provisions of Sec. 5, subarticle 21 to 30, alleging that he was violating subsection 25 (a), (b) and (c).

Warren's answer was to the effect that he was an Oklahoma producer of eggs within the purview of subarticle 29; that he was selling eggs produced from his own flock to the consumer; that the rules and regulations of the Board of Agriculture, making an Oklahoma producer selling eggs. from his own flock to the consumer, and purchasing eggs from other flocks, but not selling them to consumers, to come within the purview of the Act as to all eggs.

handled, is in conflict with the clear purport of the Act.

The evidence adduced at the trial was not in conflict and was substantially as hereinbefore detailed. The trial court found that plaintiff was not entitled to injunctive relief and entered judgment for the defendant.

In due time motion for new trial was filed and overruled and an appeal perfected to this Court.

2 O.S.Supp. Sec. 5 subarticles 21 to 30, insofar as pertinent to issue herein involved provides:

Subarticle 21.

"(c) 'Dealer' shall mean and include any person handling eggs commercially.

"(d) 'Consumer' shall mean any person using eggs for food * * *.

"(e) 'Containers' shall mean any container in which eggs are dispensed to consumers.

"(f) 'Retailer' shall mean and include any person who sells eggs to a consumer.

"(g) 'Board' shall mean the State Board of Argiculture."

Subarticle 25:

"It shall be a violation of this subarticle for any person other than those exempted in Section 9 of this subarticle:

"(a) To sell, display for sale, or offer for sale, eggs below the quality of 'Oklahoma Grade C' to consumers. * * *

"(b) To sell, display for sale, or offer for sale, eggs to consumers unless the container, or a label attached to the container, shows the date the eggs were placed in such container and indicates the correct size and grade of the eggs contained therein, * * *.

"(c) To sell, display for sale, or offer for sale, eggs to consumers unless there is indicated on the container the name and address of the dealer by or for whom the eggs were graded, marked or labeled * * *.

* * * * * *

"(g) To sell, display for sale, or offer for sale, eggs to consumers in a container which does not bear an inspection fee stamp, issued by the Board, showing that the inspection fee has been paid thereon, * * *."

Subarticle 26:

"The Board and inspectors under its supervision and control shall enforce the provisions of this subarticle. The Board shall adopt rules and regulations as it deems necessary to carry out the provision of the subarticle."

Subarticle 29:

"Oklahoma producer of eggs selling ungraded eggs of his own flock production is exempt from the provisions of this subarticle, provided that if such producer desires to sell graded eggs, he shall be permitted to do so if he complies with the provisions of this subarticle."

Proceeding under the authority granted in subarticle 26, the Board adopted rules and regulations to implement the carrying out of said Act, among which is "Regulation No. 6" which is as follows:

"Any Oklahoma producer handling any other eggs except those of his own flock production shall be construed to be a dealer as defined under paragraph c, Sec. 1, (5–21c) of the egg law and shall be subject to all the provisions of the law pertaining to dealers. This regulation applies to all eggs handled by such producer whenever he also deals in eggs other than those of his own flock production."

It is admitted, and the evidence discloses, that the defendant sold to the consumers ungraded eggs of his own flock production. He further testified that he bought eggs from other producers, but did not sell them to the consumer, selling them to dealers only. Thus unquestionably defendant was in violation of said Regulation No. 6.

■ The enforcement of this Act was devolved upon the Board of Agriculture. Proceeding by injunction action to enforce an Act by an administration board has been approved. Taylor v. State ex rel. Rutherford, Okl., 291 P.2d 1033; 2 O.S.Supp. Sec. 2–4(c).

■ The construction of an Act by the administrative board charged with the duty of the enforcement, is accorded due consideration by the court in construing the Act, and is given great weight if the meaning of the statute is doubtful. McCain v. State Election Board, 144 Okl. 85, 289 P. 759; Elliott v. State ex rel. Kirkpatrick, 150 Okl. 275, 1 P.2d 370.

■ By the same token the construction should be consonant with the effectuation of the apparent purposes rather than that which might encourage the evil against which it is directed. Bell v. United Farm Agency, Okl., 296 P.2d 149.

■■ The legislature, by statutory enactment, determines the policy and establishes the standard, but may direct an administrative board or department to enforce the same by making rules of subordinate character within the prescribed limits to carry out such policy and in connection therewith determine some of the facts on which the law depends. In considering such administrative rules, the court will presume that the administrative board has acted regularly and in a lawful manner, and that the burden of proving otherwise is upon the party complaining. Ludwig v. Yancey, Okl., 318 P.2d 450.

■ The apparent purpose of the hereinbefore referred to "Oklahoma Egg Law" is to protect the consumer from eggs of unknown quality and age. It requires that a dealer in eggs must be licensed and the container must show the date eggs were placed therein and correct size and grade of the eggs. A dealer is defined as "any person handling eggs commercially."

■ There can be no doubt of the legislative policy. Only eggs of known quality and age, graded under the identical standards with those of the United States Department of Agriculture were to be sold in Oklahoma to the consumer for food. However, consistent with this policy by Sec. 5, subarticle 29 it exempted from the provision of the Act an "Oklahoma producer of eggs selling ungraded eggs of his own flock production", but provided that should such Oklahoma producer desire to sell graded eggs to the consumer he could do so by complying with the Act. Thus an Oklahoma producer may sell ungraded eggs dropped by his own flock to the consumer.

The policy of the law is directed at those eggs handled by those other than the Oklahoma producer and sold to the consumer. Until eggs get to one, other than the Oklahoma producer of the eggs from his own flock, who directly or indirectly is going to sell the eggs to the consumer, the law does not apply.

■ There is nothing in the Act or the policy therein created that would prevent an Oklahoma producer from selling ungraded eggs dropped by his own flock to the consumer and from handling eggs purchased from others which he did not sell to the consumer. It follows that Regulation No. 6 of the plaintiff Board goes beyond that which is contemplated by the Act in extending the requirements of the Act to the eggs produced by his own flock where an Oklahoma producer also handled other eggs commercially, but did not sell to the consumer.

Under the undisputed facts in this case the defendant Warren sold ungraded eggs produced from his own flock to the consumer. He also bought eggs from others which he did not sell to the consumer but sold to others who would necessarily have to have them graded and otherwise comply with the Act before sale thereof to the consumer.

■ The legislative policy requiring the grading of, and the placing in marked containers of eggs sold to the consumer by a dealer, other than eggs produced from his own flock by an Oklahoma producer, does not make necessary the assumption that

such Oklahoma producer must comply with the provisions thereof merely because he purchases eggs from others which he does not sell to the consumer. Without proof to the contrary such a producer must be assumed to be complying with the law. To effectuate the evident legislative purpose it does not require that the fundamental precept of our jurisprudence that a man is innocent until proven guilty must be overturned.

No effort was made by the plaintiff to show a violation of the law by the defendant. It relies solely upon the violation of the administrative Regulation No. 6 which extends the Act beyond that contemplated thereby and is violative thereof.

Judgment affirmed.

DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.