Allen WEST, Appellee,

v.

**OKLAHOMA WATER RESOURCES BOARD, Appellant,**

and

**Oklahoma Wildlife Federation, Intervenor.**

No. 75397.

Court of Appeals of Oklahoma, Division No. 3.

Sept. 17, 1991.

Dean Couch, Jeannine Hale, Oklahoma City, for appellant.

Andrew T. Dalton, Jr., Tulsa, for appellee.

OPINION

HANSEN, Presiding Judge:

Appellant, Oklahoma Water Resources Board (Board), seeks review of the trial court's order finding a portion of Rule 300.7, and all of Rule 300.17, *Oklahoma's*

*Water Quality Standards 1988*,[1] to be invalid and contrary to law, and enjoining enforcement or application of these rules. We reverse and remand.

Appellee, Allen West (West), is a riparian owner along Bird Creek in Tulsa County. He initiated this action by his Petition for Declaratory Judgment, citing 75 O.S.1981 § 306.[2] Section 306, in relevant part, provides:

> The validity or applicability of a rule may be determined in an action for declaratory judgment ... if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

In his Petition, West alleges Board has, or threatens to, apply Rules 300.7 and 300.-17, Oklahoma Water Quality Standards (Standards), to Bird Creek to impermissibly downgrade water quality, classification and use. West further alleges such action would interfere with or impair, or threaten to interfere with or impair, his rights and privileges. He asks the trial court to declare the rules invalid because they conflict with the express policy of the state and because Board has no authority to promulgate rules for classification of waters which downgrade uses, quality and classifi-

cation. Finally, West asks that Board be permanently enjoined from applying or threatening to apply the allegedly invalid rules.

After Board's Answer, the parties conducted discovery, but by agreement, no further action was taken by either pending Board's completion of a hydrological study of Bird Creek. This study—A Study to Evaluate the Dissolved Oxygen Criterion[3] for Bird Creek, Oklahoma—was being conducted by Board's staff, in conjunction with the City of Tulsa, at the time the action was filed. It is this study which West asserts as the basis for the requisite "threat" to give him standing to bring the action under 75 O.S.1981 § 306.

Shortly after the report of the study was issued, West moved for summary judgment. Board filed its response to West's motion. The trial court granted West's motion, finding Rule 300.17 wholly invalid and contrary to statute, and Rule 300.7 invalid and contrary to statute only insofar as it provides for the classification "Habitat Limited Fishery", along with its dissolved oxygen criteria. The trial court enjoined Board from enforcing or applying either of these rules. Board appeals from this order.

---

1. The trial court's judgment used rule numbers from an amended version of the Standards adopted after the initial petition was filed. We find no substantive change in the amendments which would affect the outcome here. As amended, and in relevant part, the rules under review here are:

*300.7* FISH AND WILDLIFE PROPAGATION: The narrative and numerical criteria in this section are designed to promote fish and wildlife propagation for the fishery classifications listed below:

Habitat Limited Fishery
Primary Warm Water Fishery

......

(A) Dissolved Oxygen: Dissolved oxygen (DO) criteria are designed to protect the diverse fisheries of Oklahoma....
Except for naturally occurring conditions, the dissolved oxygen criteria are ... (Note: Without setting out the DO criteria in complete detail, we note the criteria minimums are higher for Primary Warm Water Fishery than for Habitat Limited Fishery).
*300.17* SITE SPECIFIC CRITERIA: All surface waters of the state designated as (SSC) are pro-

tected by specific numerical criteria set forth in Appendix E which supercede the numerical criteria found in Rules 300.5 and 300.7. Waters of the state may be designated (SSC) if hydrological characteristics, irreversible man-induced impacts, beneficial use attainment, and/or substantial and widespread economic and social impacts so require.

2. As with the Water Quality Standards, § 306 was amended during the pendency of this action in the trial court, but the amended language is not relevant to West's standing, the definitive issue in this appeal.

3. The Water Quality Standards define these relevant terms:
CRITERION—A number or narrative developed for a substance, and assigned to protect a designated beneficial use.
DESIGNATED BENEFICIAL USES—Those uses specified for each waterbody or segment whether or not they are being attained.
DISSOLVED OXYGEN—The amount of oxygen dissolved in water at any given time, depending upon....

As its first proposition of trial error, Board contends West lacked standing to bring this action because he failed to demonstrate the challenged rules posed any threat to interfere with or impair his legal rights associated with Bird Creek. We agree. In view of our holding on this issue, we have no need to discuss Board's other contentions of error.

In our consideration of Board's "standing" argument, we are guided by the Supreme Court's discussion of that issue in *Democratic Party of Oklahoma v. Estep*, 652 P.2d 271 (Okla.1982):

> Standing focuses on the party seeking to get his complaint before the court and not on the issues tendered for determination...., the inquiry posed is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the tendered controversy. One who is not "aggrieved" by a decision—however erroneous—may not bring a challenge to its validity.

■ In 75 O.S.1981 § 306, the Legislature has specifically authorized seeking declaratory judgment, in the appropriate district court, as to the validity or applicability of administrative rules. One has standing to bring such action only if he is "aggrieved" by the challenged rule interfering with, or impairing, or threatening to interfere with or impair, his legal rights or privileges. While West contends he has met that test, we are not persuaded he has done so.

■ As we noted above, West argues Board, through the use of Rule 300.17, threatens to downgrade the water quality of Bird Creek by lowering the dissolved oxygen criteria, and additionally threatens, either directly through the use of Rule 300.7, or *de facto* through lower dissolved oxygen criteria, to reclassify Bird Creek's presently designated beneficial use of Primary Warm Water Fishery to the less desirable use of Habitat Limited Fishery. West asserts Board intended, and still intends, to accomplish these results through the use of the scientific study Board conducted, or some future study.

The report of the study recommended no modification of the dissolved oxygen criterion as applied to Bird Creek, finding "the statewide criteria which currently applies to Bird Creek appears to be appropriate, neither *too low or too high*". (emphasis added). The record reveals nothing to indicate Board acted, or intends to act, contrary to the report's recommendation.

To prove a purported continuing threat of harm, West relies on a statement in the study report that a secondary objective of the study was to collect baseline stream data to which data from *future* studies could be compared. West does not, however, and could not, because they do not exist, provide us with the parameters of such future studies to establish it would result in degradation of Bird Creek's water quality, or affect its designated uses to West's detriment.

To the contrary, our examination of the agreement leading to the original study, and the report of that study, fail to convince us, as West argues, the study was conducted "so that Tulsa could discharge more pollution than it otherwise could into Bird Creek". Similarly, West's repeated argument that Board enacted Rule 300.17 "so that increased pollution would be authorized", is equally unpersuasive.

The study agreement provided that before a modified criterion could be applied to a site, it had to be demonstrated the criterion adequately protects the highest potential uses of the site. Additionally, the report reveals a comprehensive discussion of the study findings in support of the report's recommendation that modification of the dissolved oxygen criteria to some level *higher* than required by state standards was unwarranted. It is clear *upgrading* of the dissolved oxygen criteria was recognized as an alternative recommendation.

Further, Board has continually acknowledged "a lower (dissolved oxygen) value could only be established if scientific studies establish that such a lower number would be protective of beneficial uses as required by law and would *not* lower water quality".

West's conclusional assertions the study was only an artifice whereby Board and the City of Tulsa could justify pollution is not supported by the record.

The question of what is a "threat" which will support standing under 75 O.S.1981 § 306 has not been determined in Oklahoma. The Third Court of Appeals of Texas, interpreting a provision similar to § 306, stated in *State Board of Insurance of Texas v. Deffebach*, 631 S.W.2d 794 (Tex. Civ.App.1982):

> If one shows an affirmative act by the agency to apply its rule to him and that the application of the rule would adversely affect his legal rights or privileges, he has standing to challenge the applicability of the rule in a ... declaratory judgment suit.

In *Deffebach*, the Court found standing because the challenged agency rules would have effectively imposed a ceiling on the petitioner's commission income, without further action by the agency. Here, the challenged rules could not have affected West without a scientific study as a precondition, and would then require a proposal for application of the rules, with administrative due process. Under § 306, the agency's affirmative act must create more than the mere possibility of application to constitute the requisite threat.

No action was taken pursuant to the original study of Bird Creek to adversely affect West's rights and privileges, nor does the record support the alleged foregone conclusion that any future study would necessarily have done so.

■ In the absence of convincing evidentiary material otherwise, we will presume a state agency has acted regularly and in a lawful manner. *State ex rel. State Board of Agriculture of Oklahoma v. Warren*, 331 P.2d 405 (Okla.1958). Similarly, we cannot presume Board will in the future improperly use its rules to lower water quality contrary to statutory mandate.

West would have us find Board conspired with the City of Tulsa to violate the most basic tenet of our water pollution control laws, found in the Declaration of Policy, 82 O.S.1981 § 926.2:

> ... it is hereby declared to be the public policy of this state to conserve the waters of the state and to protect, maintain and improve the quality thereof ...

This statement, by its very nature, delimits all rules and regulations promulgated under the authority of the pollution remedies laws, 82 O.S.1981 § 926.1 et seq., including Oklahoma's Water Quality Standards. In fact, § 926.2 is incorporated into the Standards at Rule 300.1, which prefaces the rules being challenged. Also, the statement of public policy is amplified by Rule 100.1, which sets forth the quote, "Oklahoma statutes do not allow the lowering of water quality of Oklahoma waters", citing Op.Atty.Gen. 85–87 (March 7, 1986).

West neither persuades us of the alleged unlawful compact, nor establishes how Rules 300.7 and 300.17 would otherwise interfere with or impair, or threaten to interfere with or impair, his rights or privileges. The study, which is clearly the underpinning for West's standing argument, was at most a preliminary procedure to recommend whether site specific criteria should be applied in accordance with Rule 300.17. Action under Rule 300.7 could have only resulted from the study if Board had impermissibly lowered the dissolved oxygen criterion in such a way that it would not have been protective of designated uses. Board has conceded it could not do so, and we may not presume otherwise.

Under the test applied in *Deffebach*, the study is too attenuated from West's interests to be considered an affirmative act by Board to apply its rules to adversely affect his interests. To be sure, the results of the study belie West's pre-report contention the study, and the rules, could *only* be used to adversely affect his interests.

■ Assuming, *arguendo*, that West did have standing to initially bring the action, the question of validity of the challenged rules, and the possible application to him, became moot when the report of Board's Bird Creek study was issued and no action was taken to modify the dissolved oxygen criteria. We will not decide a controversy after it has become a mere abstract argu-

ment, nor "restrain an invasion of an alleged right that has never occurred, nor is threatened", *Davis v. Little*, 289 P.2d 666 (Okla.1955).

The judgment of the trial court is REVERSED and this matter is REMANDED with directions to dismiss West's Petition for Declaratory Judgment.

West's motion to dismiss this appeal and his request to file supplemental authority not available at trial or briefing time are DENIED.

HUNTER, C.J., and JONES, J., concur.